STATE OF MINNESOTA )
                   ) ss.
COUNTY OF HENNEPIN )

1. I am a Special Agent of the United States Department of Justice, Federal Bureau of Investigation (FBI), and have been so employed since 2018. I am currently assigned to the Minneapolis Field Office under the Violent Crime Squad where my investigative responsibilities include the criminal investigation of federal violent crimes to specifically include assaults or interfering with Federal Law Enforcement Officers in the performance of their official duties. Prior to my assignment in the Minneapolis Field Office, I was assigned to the Seattle Field Office where I investigated violent crime in Indian Country and other Federal criminal violent crime investigations. I have completed the FBI Academy, Indian Country Basic Investigators Training Program, and a Georgia Peace Officer's Academy, in addition to being previously employed as a Police Officer and Detective in the State of Georgia from 2014 to 2018. In my time as a law enforcement officer, I have investigated numerous matters involving interfering, assaulting or intimidating a law enforcement officer during the official performance of their duties.

2. This affidavit is submitted for the limited purpose of establishing probable cause in support of issuing a complaint and arrest warrant for Oluwadamilola Ogooluwa BAMIGBOYE and Rekeya Lionesha Lee FRAZIER

for assault of a federal officer in violation of Title 18, United States Code, Section 111(a).

3. This affidavit is based on my personal knowledge, as well as information I have learned from other law enforcement officers and the review of reports, written materials, and recordings. This affidavit does not include all of the details I have learned regarding this investigation. Rather, it only includes information believed to be sufficient to establish probable cause.

## PROBABLE CAUSE

4. On the afternoon of December 10, 2025, agents of the Department of Homeland Security Investigations (HSI) were conducting surveillance at an apartment complex located at 3934 Lancaster Lane North in Plymouth, Minnesota. Agents were looking for BAMIGBOYE because BAMIGBOYE had overstayed a student visa. BAMIGBOYE lived in the apartment complex, and agents were conducting surveillance on his vehicle (a Kia Optima) parked outside the complex.

5. Agents were in an unmarked Ford Explorer equipped with lights and sirens. Two of the agents were in plain clothes. One of the agents had a marked vest with a placard that said "POLICE" and "HSI."

6. Agents watched a Jeep SUV back into a parking spot directly next to BAMIGBOYE's Kia Optima. Agents recognized BAMIGBOYE as the Jeep's front seat passenger. A woman—later identified as FRAZIER—was driving.

7. As they watched the Jeep, it appeared to agents that BAMIGBOYE noticed their law enforcement vehicle: they saw BAMIGBOYE pull a mask over his face, and it appeared to agents that BAMIGBOYE was attempting to obscure his identity. BAMIGBOYE got out of the Jeep and began to move items from the front seat to the back seat of the vehicle. FRAZIER likewise got out of the vehicle but remained near the driver's seat of the Jeep.

8. Agents approached the Jeep on foot. They displayed their badges and credentials as they approached and identified themselves as law enforcement officers. They told BAMIGBOYE they wanted to talk to him about his immigration status. BAMIGBOYE, then at the Jeep's backseat, asked what kind of police they were. The agents answered that that were HSI agents. BAMIGBOYE immediately jumped into the backseat of the vehicle and began to cling to the front seat headrest. He yelled at FRAZIER "Drive! Drive! Drive! Get in the car and drive!" or words to that effect.

9. FRAZIER got back into the driver's seat of the Jeep and started the vehicle. One agent (hereinafter "AGENT 1") got into the front seat of the Jeep in an attempt to stop FRAZIER from driving away. Another agent (hereinafter "AGENT 2") attempted to pull BAMIGBOYE out of the Jeep through the backseat.

10. FRAZIER and AGENT 1 began to struggle over the vehicle's transmission as AGENT 1 tried to keep FRAZIER from putting the Jeep into

drive. Meanwhile, BAMIGBOYE began to try to push AGENT 1 out of the Jeep. FRAZIER was able to get the Jeep into drive and began to drive away. AGENT 2 was forced to jump back from the Jeep to avoid being hit. The forward movement of the Jeep caused the front passenger door to close while AGENT 1 was still in the passenger seat. AGENT 1 was now being involuntarily carried in the Jeep as it drove.

11. AGENT 1 demanded that FRAZIER stop the vehicle, telling her that she was making a very bad decision and making the situation worse (or words to that effect). AGENT 1 continuously attempted to put the Jeep into park. FRAZIER continued to push AGENT 1's hand away. At one point FRAZIER told AGENT 1, "If you don't stop, I'm going to crash the car," or words to that effect. FRAZIER told AGENT 1 they were taking him to the police department.

12. AGENT 1 is assigned to another HSI office and is not familiar with Minnesota (he is on temporary detail for an operation). He is not familiar with the area and had no idea where they were going. He was in fear that he was being abducted.

13. Meanwhile from the backseat of the car BAMIGBOYE called 911. AGENT 1 yelled to the dispatcher that he was a federal agent. AGENT 1 also called him operational command post to advise them of the situation.

14. AGENT 1 drew his firearm and demanded that FRAZIER stop the car. FRAZIER continued to drive.

15. At the same time, the HSI agents at the initial encounter were following in the HSI Ford Explorer with their lights and sirens on. Also fearful that AGENT 1 was being abducted, the pursuing agents kept close to the Jeep, at one point inadvertently hitting it from behind in the snow.

16. FRAZIER parked the Jeep outside the New Hope Police Department located at 4401 Xylon Avenue North (about two miles away from the apartment complex). As the Jeep slowed, the HSI Explorer parked in front of the Jeep to pin it in. BAMIGBOYE immediately jumped out of the Jeep and ran into a nearby Hy-Vee grocery store. AGENT 2 gave chase.

17. AGENT 2 encountered a uniformed police officer in the Hy-Vee. AGENT 2 and the uniformed officer found BAMIGBOYE in the back of the store. The uniformed officer directed BAMIGBOYE to get on the ground at taser point. BAMIGBOYE refused. AGENT 2 took BAMIGBOYE to the ground and arrested him.

18. Meanwhile FRAZIER was refusing HSI agents' orders to exit the Jeep. Eventually uniformed police officers arrived on-scene and arrested FRAZIER.

19. BAMIGBOYE and FRAZIER were both federally arrested and remain in custody.

20. On the evening of December 10 other agents of the FBI and I spoke to BAMIGBOYE and FRAZIER. FRAZIER declined to speak to us. BAMIGBOYE agreed to speak to us after rights advisement and waiver. BAMIGBOYE denied that the agents showed their credentials or badges. BAMIGBOYE admitted told FRAZIER to drive away from the scene (he initially claimed he told her to drive to a police station, but later indicated he might have only asked her to drive). BAMIGBOYE admitted to having tried to push AGENT 1 out of the car, and said he saw FRAZIER and AGENT 1 wrestle over the transmission. BAMIGBOYE claimed that he acted the way he had because he had PTSD from having been previously kidnapped while living in his native country of Nigeria.

## CONCLUSION

21. Based on the information set forth above, there is probable cause to believe that the Defendants, Oluwadamilola Ogooluwa BAMIGBOYE and Rekeya Lionesha Lee FRAZIER, violated Title 18, United States Code, Section 111, and that the act involved contact with the victim and the intent to commit another felony.

Further your Affiant sayeth not.

_____
Terry A. Getsch
Special Agent, FBI


SUBSCRIBED and SWORN before me
by reliable electronic means via FaceTime
and email pursuant to Fed. R. Crim. P. 41(d)(3) on
December 11, 2025

_____
DAVID T. SCHULTZ
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF MINNESOTA